# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 3938 | DATE | Nov. 16, 2004 |
| CASE TITLE | Patricia Witt | v | County Insurance & Financial Services |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOJune 14, 2004CKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing set for 11/24/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss is granted with respect to counts III, XII, and XIII. Defendant's motion to strike plaintiff's jury demand and prayer for compensatory and punitive damages under her ADA retaliation claim is granted. Defendant's motion to strike plaintiff's jury demand and prayer for relief under her ERISA claim is denied.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | NOV 1 8 2004 date docketed | |
| | Notified counsel by telephone. | | | 18 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| GDS | courtroom deputy's initials | 2004 NOV 17 PM 2:17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA WITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 3938 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| COUNTY INSURANCE & FINANCIAL | ) |
| SERVICES, | ) |
| Defendant. | ) |

**DOCKETED**
**NOV 1 8 2004**

## MEMORANDUM OPINION AND ORDER

On June 10, 2004, Patricia Witt ("Witt") filed a thirteen count complaint against Country Insurance & Financial Services ("defendant")[1] alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12201 et seq., and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 et seq., as well as claims for breach of contract and intentional infliction of emotional distress ("IIED"). All of plaintiff's claims are related to her employment as a field claim representative for defendant from January 2, 2001, until her termination on July 3, 2003.

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendant has filed a motion to dismiss three counts of plaintiff's complaint: Count III (familial status discrimination in violation of Title VII); Count XII ( breach of contract); and Count XIII (IIED). Defendant asserts that familial

---

[1]Defendant states that neither "Country Insurance and Financial Services" nor "Country Insurance" exist as legal entities, and that plaintiff was employed by CC Services, Inc. Plaintiff does not agree to change the caption or to substitute the parties. The court notes that the parties should be able to resolve this seemingly simple issue amicably, but if plaintiff has named parties that are not legal entities and therefore cannot be sued, defendant should file a motion for summary judgment and appropriate sanctions.

status discrimination is not a recognized claim under Title VII, and that plaintiff's state law claims are preempted by the Illinois Human Rights Act ("IHRA"), the Illinois Workers' Compensation Act ("IWCA"), and/or ERISA. Defendant has also moved to strike certain demands for relief and for a jury trial on Count IX (retaliatory discharge in violation of the ADA) and Count XI (retaliatory discharge in violation of ERISA). For the reasons explained below, defendant's motion to dismiss is granted as to Counts III, XII, and XIII. Defendant's motion to strike plaintiff's jury demand and request for compensatory and punitive damages under plaintiff's ADA retaliation claim is granted. The parties agree that defendant's motion to strike plaintiff's jury demand and request for relief under her ERISA retaliation claim is moot.

## FACTS

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Plaintiff was employed by defendant from January 2, 2001, through July 3, 2003, as a field claim representative in the Grayslake, Illinois office. Defendant provided plaintiff a benefits package throughout her employment that included health insurance, life insurance, long-term disability, and a diversified plan.

In March 2001, plaintiff took an unpaid eight-week leave of absence under the FMLA when her three and a half year old daughter was diagnosed with cancer. Plaintiff returned from this leave of absence in May 2001. Plaintiff alleges that immediately after she returned to work she was treated differently from similarly situated male counterparts, including when she was refused a promotion and an allegedly less-qualified man was promoted.

2

In December 2001, plaintiff informed defendant that she was pregnant, and in January 2002, plaintiff informed defendant that she would take twelve weeks of maternity leave. Plaintiff alleges that after announcing her pregnancy and her intention to take maternity leave, she was treated differently than similarly situated non-pregnant employees. Plaintiff claims that: (1) she was refused a promotion, and defendant hired a less-qualified man from outside of the company; (2) her work product and/or assignments were taken away from her and reassigned to male employees; (3) she was subjected to a pattern of sexual harassment by supervisors and other employees; (4) she was subjected to threats that defendant would take away her company car during her maternity leave; and (5) she was subjected to threats that she would lose her job and/or be demoted during her maternity leave if she took twelve weeks of leave.

Plaintiff claims that she complained to defendant's agents about the alleged discriminatory conduct of defendant's supervisors and employees. Plaintiff asserts that defendant failed to respond properly, and that she was subjected to retaliatory discrimination after making her complaints, including inappropriate comments and threats to take away her company car.

On June 3, 2002, plaintiff began her FMLA maternity leave. Defendant approved the leave to continue through August 28, 2002. On August 25, 2002, plaintiff was diagnosed with cancer. Plaintiff returned from maternity leave on August 28, 2002. At some point prior to September 18, 2002, plaintiff was ordered by her physician to undergo chemotherapy for treatment. Plaintiff notified defendant of her doctor's orders and her disability, and requested medical leave. On September 18, 2002, plaintiff went on medical leave. Plaintiff claims that

3

defendant took away plaintiff's company car on September 18, 2002, allegedly in violation of company policy.

On or about February 18, 2003, plaintiff returned to work from her medical leave. On or about February 21, 2003, plaintiff was advised that her position would be eliminated sometime between June 1, 2003, and December 31, 2003. Plaintiff was terminated on July 3, 2003.

Plaintiff claims she was the only claims representative from the Grayslake office who was terminated, and that other less qualified, non-pregnant, non-disabled, and male employees were not terminated. Plaintiff asserts that the conduct of defendant's supervisors, employees and agents created a hostile work environment. Plaintiff also alleges that she made numerous complaints to defendant's management regarding the discriminatory and retaliatory conduct of defendant's employees, supervisors, and agents up to and until July 3, 2003.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendant, and received a right-to-sue letter from the EEOC dated March 16, 2004.

## DISCUSSION

Defendant has moved to dismiss Count III pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003).

Defendant has moved to dismiss Count XII and Count XIII pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff bears the burden to establish that the jurisdictional requirements exist. Newman v. Hansen & Hempel Co., 2002 WL 31455990, at *2 (N.D.Ill. Nov. 1, 2002).

## I. Familial status discrimination in violation of Title VII (Count III)

In Count III of her complaint, plaintiff alleges that certain "adverse employment actions were taken against her because of her familial and/or pregnancy status" in violation of Title VII.[2] Defendant argues that no independent cause of action for "familial discrimination" exists under Title VII, citing Cleaves v. City of Chicago, 68 F.Supp.2d 963, 967 (N.D.Ill. 1999) (quoting Coleman v. B-G Maintenance Management of Colorado, Inc., 108 F.3d 1199, 1204 (10th Cir. 1997)) ("Title VII prohibits employers from treating married women differently than married men, but it does not protect marital status alone."). Plaintiff concedes that defendant correctly stated the rule expressed in Cleaves.[3] In an attempt to save her claim, plaintiff asserts that she "is not arguing that she was treated differently because she was married."[4] Plaintiff fails, however,

---

[2] Count I of plaintiff's complaint alleges that certain "adverse employment actions were taken against her because of her pregnancy status, in violation of Title VII..." Because her reference to pregnancy in Count III is redundant of her claims in Count I, the court will treat Count III as alleging "familial status" discrimination only.

[3] The court notes that plaintiff's characterization of Despot v. Combined Ins. Co. of America, 2004 WL 1088361 (N.D.Ill. May 12, 2004), is misleading, and contradicts her acceptance of the holding in Cleaves and other cases. Despot merely noted that the plaintiff's numerous claims "may be brought under Title VII or the IHRA," but were barred in that case because of the plaintiff's failure to exhaust his administrative remedies. Id. at *1. The Despot court did not address the issue of familial status discrimination, parse the individual claims or distinguish which were actionable under Title VII and which under the IHRA.

[4] The court notes that plaintiff confuses the issues at hand by citing several cases that are inapposite to her Title VII familial status claim. For example, Back v. Hastings on Hudson

5

to demonstrate another basis for her familial status claim, but rather merely repeats her sex and pregnancy allegations under a new heading.

Title VII prohibits discrimination based upon "race, color, religion, sex or national origin." 42 U.S.C § 2000e-2(a). Discrimination based on marriage is not forbidden by the language of Title VII. See, e.g., Whitmore v. Bd. of Educ. of DeKalb Comm. Sch. Dist. No. 428, 1992 WL 70339, at *6 (N.D.Ill. Mar. 18, 1992). Title VII does, however, prohibit discrimination on the basis of marriage plus gender. Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 (1971) (distinct hiring policies for woman and men, each having pre-school-age children, may violate Title VII); Sprogis v. United Air Lines, 444 F.2d 1194, 1198 (7th Cir. 1971) (a no-marriage rule directed against only female flight attendants is sex discrimination in violation of Title VII.); Stern v. Cintas Corp., 319 F. Supp. 2d 841, 858 (N.D.Ill. 2004) ("Under Title VII, an employer may not treat mothers and mothers-to-be differently from fathers and fathers-to-be.")[5]. "Gender plus" claims are really a sub-category of gender discrimination claims, and a plaintiff must allege discrimination, harassment or retaliation based on her gender plus her familial status, not merely familial status alone. See Stern 319 F. Supp. 2d at 858.

Plaintiff states that "[d]iscrimination based upon marital/family status may be cognizable as sex discrimination where there is a disparate impact upon the sexes." Plaintiff does not,

---

Union Free Sch. Dist, 365 F.3d 107, 113 (2nd Cir. 2004), involved a §1983 claim from another circuit. Also, despite plaintiff's attempt to cast it as a familial status case, Sheehan v. Donlen Corp., 173 F. 3d 1039 (7th Cir. 1999), affirmed the magistrate judge's denial of the defendant's motion for judgment as a matter of law in a pregnancy discrimination case.

[5]The court notes that plaintiff misstates the holding in Stern as "employers may not treat mothers-to-be and fathers-to-be differently." In doing so, plaintiff neglects the essential element of a "sex plus" claim: that men and women be treated differently.

6

however, point to employees of defendant who were fathers or married and were treated differently than plaintiff. Absent allegations of a disparate impact upon men and women, Count III does not state an independent cause of action under Title VII, and merely repeats her claims of pregnancy and sex discrimination from Count I and Count II. Accordingly, defendant's motion to dismiss Count III is granted.

## II. IIED (Count XIII)

Count XIII of plaintiff's complaint states an IIED claim. Defendant asserts that Count XIII should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the court lacks jurisdiction over this claim because it is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/1-101 et seq., and the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 et seq.

The IHRA preempts all state law claims seeking redress for a 'civil rights violation' within the meaning of that statute. Krocka v. City of Chicago, 203 F.3d 507, 516 (7th Cir. 2000), quoting Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.2d 507 (Ill. 1994). See also 775 ILCS 5/8-111(C) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than set forth in this Act."). The IHRA prohibits, inter alia, employment discrimination based on a person's sex and sexual harassment in the workplace. See 775 ILCS § 5/1-102(A); 775 ILCS § 5/1-102(B).

The Illinois Supreme Court held in Maksimovic v. Tsogalis, 177 Ill.2d 511, 517 (Ill. 1997), that the IHRA preempts claims that are "inextricably linked" to a civil rights violation. Because the plaintiff in Maksimovic alleged the elements of the torts, "without reference to legal duties created by the [IHRA], [the plaintiff] established a basis for imposing liability on the

7

defendants independent of the [IHRA]." Id. Courts in this district have "routinely dismissed Illinois state tort claims - particularly IIED claims - for lack of jurisdiction when brought in connection with allegations of a civil rights violation." Dardai v. Cook County, 1999 WL 46906, at *9 (N.D. Ill. Jan. 28, 1999); quoting Ratley v. Aurora, 1998 WL 30697, at *3 (N.D.Ill. Jan. 22, 1998) (citations and quotations omitted); see also Johnson v. Chicago Bd. of Educ., 2002 WL 1769976, at *5 (N.D.Ill. Aug. 1, 2002); Westphal v. City of Chicago, 8 F. Supp. 2d. 809, 812 (N.D.Ill. 1998); Silk v. City of Chicago, 1997 WL 790598, at *17 (N.D.Ill. Dec. 17, 1997).

Pursuant to the seminal holdings in Geise and Maksimovic[6], when deciding whether a claim is preempted, courts must look at the essence of the claims in order to determine whether the tort claim at issue is, in reality, a claim of discriminatory acts covered by the IHRA. Silk, 1997 WL 790598, at *16. "In other words, there must still exist a foundation for the emotional distress claims even if the defendants' conduct was not discriminatory." Westphal, 8 F. 2d. at 812. The question in the instant case is whether the alleged elements of plaintiff's IIED claim reference the legal duties created by the IHRA, or whether plaintiff's IIED claim could exist independent of her discrimination claims.

Plaintiff claims that she was harmed by defendant's conduct toward her, including denying her a promotion, reassigning her work projects to other employees, threatening to and

---

[6]The court notes that plaintiff improperly attempts to substitute the preemption test formulated in Bailey v. Unocal Corp., 700 F. Supp. 396 (N.D.Ill. 1988), and attempts to substitute it for the well-established Geise-Maksimovic analysis. Bailey and most of its progeny were decided before Geise and Maksimovic, and this line of cases has been criticized and abrogated by numerous courts. See Peric v. Bd. of Trustees of Univ. of Ill., 1997 WL 112819, at *8 (N.D.Ill. Mar. 10, 1997); Hannigan-Haas v. Bankers Life and Cas. Co, 1996 WL 139402, at *3 (N.D.Ill. Mar. 26, 1996). Geise and Maksimovic set forth the proper test for preemption under the IHRA, and the court will apply that analysis to the instant case.

8

ultimately taking away her company car while she was on maternity leave, harassing her, and terminating her.[7] These incidents, standing alone, do not support an IIED claim.[8] Rather, these actions are inextricably linked to plaintiff's discrimination and retaliation claims because they were "extreme and outrageous" (if at all) only to the extent that they were motivated by gender-based or pregnancy-based animus. See Krocka, 203 F.3d at 517 (affirming the trial court's dismissal of an IIED claim because it was "inextricably linked to [the plaintiff's] disability discrimination claim because [the comments] were only offensive to the extent that they referred to [the plaintiff's] disability."); Watanabe v. Loyola Univ. of Chicago, 2000 WL 876983, at *6 (N.D.Ill. July 3, 2000) ("Because plaintiff would be unable to establish her [IIED] claim absent her claims of discrimination, this claim is preempted by the [IHRA].").

Plaintiff's state tort claim is merely a recasting of the acts of discrimination, harassment, and retaliation preemptively covered by the IHRA. See Johnson, 2002 WL 1769976, at *5. To the extent that plaintiff states a claim for IIED, the court lacks jurisdiction over such a claim because it is preempted by the IHRA. Because plaintiff's claim is preempted by the IIED, the court need not reach defendant's alternative argument that the claim is preempted by the

---

[7] The court notes that plaintiff cites to a number of district court opinions holding that specific IIED claims were not preempted, but these cases are factually distinguishable, and therefore inapposite. For example, Rapier v. Ford Motor Co., 49 F. Supp. 2d 1078 (N.D.Ill. 1999), and Bruce v. South Stickney Sanitary Dist., 2001 WL 789225 (N.D.Ill. July 12, 2001), each denied the plaintiff's motion to dismiss because the defendant's alleged conduct that could be considered "extreme and outrageous" was independent of the alleged discriminatory nature of the conduct.

[8] The elements of an IIED cause of action under Illinois law are: (1) the conduct involved must be "truly extreme and outrageous"; (2) the defendant must either intend the infliction of emotional distress or know that there is a high probability that his conduct will result in such distress; and (3) the conduct must in fact cause severe emotional distress. Bennington v. Caterpillar Inc., 275 F.3d 654, 660 (7th Cir. 2001), citing McGrath v. Fahey, 126 Ill.2d 78 (1988).

exclusivity provisions of the IWCA. Accordingly, defendant's motion to dismiss Count XIII is granted.

### III. Breach of contract (Count XII)

In Count XII of her complaint, plaintiff alleges that defendant breached its contract with her by, <u>inter alia</u>, discriminating against her based on her sex, denying her reasonable accommodation as required by the ADA, and denying plaintiff's participation in defendant's employee welfare and benefits program. Defendant argues that plaintiff's breach of contract claim is barred by the IHRA and ERISA, and should be dismissed pursuant to Rule 12(b)(1).

As discussed above, the IHRA preempts common law claims that are "inextricably linked" to a civil rights violation. See <u>Maksimovic</u>, 177 Ill.2d at 517. Courts have routinely found that breach of contract claims are preempted by the IHRA. See <u>Ellman v. Woodstock #200 Sch. Dist.</u>, 2001 WL 218958, at *10 (N.D.Ill. Feb. 26, 2001); <u>Wootten v. Fortune Brands, Inc.</u>;1999 WL 705763, at *2-3 (N.D.Ill. Aug. 27, 1999); <u>Isaacson v. Keck, Mahin & Cate</u>, 1993 WL 68079, at *7-8 (N.D.Ill. Mar. 10, 1993). Like an IIED claim, a breach of contract claim is preempted when "there is no independent basis for the action apart from the [IHRA] itself." <u>Ellman</u>, 2001 WL 218958 at *10. That is, when the breach of contract claim amounts to nothing more than an alleged breach of an alleged promise to uphold the laws against discrimination. <u>Wootten</u>, 1999 WL 705763 at *3.

The specific allegations incorporated into plaintiff's breach of contract claim are the same core allegations that support her claims of sex discrimination, disability discrimination, and retaliation. The central allegations of these claims are clearly covered by the IHRA and are thus preempted. <u>Issacson</u>, 1993 WL 68079 at *8. The "IHRA preempts any state law claims in which

the plaintiff must prove discriminatory motive or impact." Seehawer v. Magnecraft Elec. Co., 714 F. Supp. 910, 914 (N.D.Ill. 1989). Plaintiff does not allege an employment contract or other agreement that contains additional terms. It appears, therefore, that her breach of claim is premised on a general contract by defendant not to discriminate against its employees. Like plaintiff's IIED claim, her breach of contract claim is inextricably linked to violations of the IHRA because without the IHRA there is no breach of contract claim. See Ellman, 2001 WL 218958 at *10; Wootten, 1999 WL 705763 at *2-3, Issacson, 1993 WL 68079 at *8.

Plaintiff also alleges in her complaint that defendant breached its contract with her by denying plaintiff's participation in defendant's welfare and benefits program which, it is undisputed, was an ERISA plan. Defendant assets that this portion of plaintiff's breach of contract claim is therefore preempted by ERISA. ERISA preempts "any and all State laws insofar as they now may or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). In so providing, Congress "blotted out (almost) all state law on the subject of [employee benefit plans], so a complaint about [such plans] rests on federal law no matter what label its author attaches." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1075 (7th Cir. 1992).

Plaintiff's allegation in Count XII that defendant breached its contract with her by terminating her, which in turn terminated her employee benefits, is redundant of plaintiff's ERISA retaliation claim in Count XI. As such, the claim is preempted by ERISA. 29 U.S.C. § 1144(a); Rice v. Panchal, 65 F.3d 637, 644 (7th Cir. 1995) (complete preemption of state law claims "is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law"); see also Miller v. Taylor Insulation Co., 39 F.3d 755 (7th Cir. 1994) (plaintiff's claim to recover on written promise by his former employer to provide

11

coverage under the company's medical reimbursement plan was preempted by ERISA). This court has held that even claims that an individual contract promises more employee benefits than an existing ERISA relate to the plan and are preempted by ERISA." Welles v. Brach & Brock Confections, Inc., 2000 WL 420738, at *2 (N.D.Ill. Apr. 12, 2000), aff'd, 14 Fed.Appx. 668, 2001 WL 823887 (7th Cir. July 18, 2001).

The portions of plaintiff's breach of contract claim that relate to defendant's alleged discrimination, harassment, and retaliation are preempted by the IHRA. The portion of Count XII that alleges that defendant breached its contract by denying plaintiff's participation in defendant's employee welfare and benefits program is redundant of Count XI and is preempted by ERISA. Accordingly, defendant's motion to dismiss is granted as to Count XII.

### IV. Motion to strike

Defendant has moved to strike: (1) plaintiff's demands for compensatory and punitive damages and for a jury trial on plaintiff's claim of retaliatory discharge under the ADA; and (2) plaintiff's demands for relief other than equitable relief for unpaid benefits and for a jury trial on plaintiff's ERISA retaliation claim. For the reasons stated below, defendant's motion to strike is granted as to plaintiff's ADA claim. The parties agree that defendant's motion to strike is moot as to plaintiff's ERISA claim.

The Seventh Circuit recently held in a case of first impression, Kramer v. Banc of America Securities, 355 F.3d 961 (7th Cir. 2004), cert. denied 124 S. Ct. 2876 (June 21, 2004), that the ADA does not allow a plaintiff to recover compensatory or punitive damages for ADA retaliation claims. Kramer further held that because the plaintiff was not entitled to recover compensatory or punitive damages on her ADA claim, she also had no statutory or constitutional

right to a jury trial. Id. at 967-68. Plaintiff cannot, and does not, dispute that this is the holding of Kramer. Rather, plaintiff suggests that the court should disregard the Seventh Circuit's opinion. Plaintiff then devotes almost eight pages of her brief to disagreeing with the reasoning of Kramer. Plaintiff should have spared herself, and the court, the time. The court is bound by the Seventh Circuit's holding in Kramer, which unambiguously bars plaintiff's jury demand and requests for relief under her ADA claim. Accordingly, defendant's motion to strike plaintiff's demand for a jury trial and her request for compensatory and punitive damages on her ADA retaliation count is granted.

In her response, plaintiff withdraws her demand for a jury trial under ERISA. Plaintiff also withdraws the all of her prayers for relief under her ERISA claim, except for: (1) lost employee benefits; and (2) attorney fees and costs. Defendant concedes in its reply that contractual remedies under ERISA may include lost benefits, and that plaintiff may be entitled in certain circumstances to recover attorneys' fees and costs under ERISA. Accordingly, defendant's motion to strike plaintiff's jury demand and prayer for relief under her ERISA claim is denied as moot.

13

## CONCLUSION

As explained above, defendant's motion to dismiss is granted with respect to Counts III, XII, and XIII. Defendant's motion to strike plaintiff's jury demand and prayer for compensatory and punitive damages under her ADA retaliation claim is granted. Defendant's motion to strike plaintiff's jury demand and prayer for relief under her ERISA claim is denied. This matter is set for a report on status on November 24, 2004, at 9:00 a.m.

ENTER:      November 16, 2004

Robert W. Gettleman
United States District Judge